# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL A. HAYWOOD,** | ) CIVIL ACTION NO. 11-1200 |
| Plaintiff, | ) |
| v. | ) |
| **THE UNIVERSITY OF PITTSBURGH, MICHAEL A. HAYWOOD,** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

CONTI, District Judge.

Defendant The University of Pittsburgh ("defendant" or "University") filed a Partial Motion to Dismiss (ECF No. 8) Count C of the Complaint. The complaint (ECF No. 1) was filed by plaintiff Michael A. Haywood ("plaintiff" or "Haywood"). Defendant seeks the dismissal of the federal claim asserted by plaintiff under 42 U.S.C. § 1983 for procedural due process violations of the Fourteenth Amendment to the United States Constitution. Because plaintiff failed to allege a property interest protected by the Fourteenth Amendment, the federal claim based upon procedural due process violations must be dismissed.

### Background

For purposes of this motion, in light of the applicable standard of review, the court will consider the following relevant allegations made by plaintiff in the complaint:

- On December 15, 2010, the University hired Haywood as its head football coach. Pursuant to the employment contract entered into by the parties, Haywood's employment

was for a term of five years; he was to receive a base annual salary of $1,000,000. He was guaranteed payments totaling $500,000 for services rendered in connection with defendant's athletic marketing contracts and media events. He was also to receive additional compensation contingent upon his achieving certain performance goals as the head football coach, which could annually total as much as $300,000. Compl. ¶ 4.

- Seventeen days into the term of the contract, Haywood was fired by Mr. Jerome Cochran, defendant's Executive Vice Chancellor. Three days later, Mr. Cochran sent a letter to Mr. Elias, plaintiff's agent, advising him that the University had terminated Haywood's employment contract with defendant for "cause." Compl. ¶ 5.

- On December 31, 2011, Haywood attempted to see his son at the residence where his son lives with the mother, Ms. Beth Marriot, in South Bend, Indiana. An argument ensued between Haywood and Ms. Marriot. Ms. Marriot called the police reporting the incident. Upon arrival, the police took Haywood in custody. He was released the next day. Compl. ¶¶ 6-12.

- After being released, Haywood attempted to contact E.J. Borghetti, defendant's Sports Information Director, to explain what had happened so that defendant could properly respond to press inquiries. Unable to reach Mr. Borghetti, Haywood next called defendant's Director of Athletics, Steve Pederson. Haywood told Mr. Pederson that he had done nothing wrong, and was on his way back to Pittsburgh, Pennsylvania, where he would explain everything the next day. Mr. Pederson did not ask any questions and never mentioned termination. Unbeknownst to Haywood, Mr. Cochran had already called Haywood's agent, Mr. Elias, and told him that Haywood's employment had been terminated. Compl. ¶¶ 12-13.

## Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing Iqbal v. Hasty, 490 F.3d 143, 157-58). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]— that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying allegations in the complaint that are not entitled to the assumption of truth because they are mere conclusions. "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

## Discussion

On September 19, 2011, Haywood filed a complaint against the University raising three claims: 1) breach of employment contract (count A); 2) breach of agreement to buy out Miami University contract (count B); and 3) deprivation of due process rights in violation of the Fourteenth Amendment (count C). (ECF No. 1.)

On October 14, 2011, the University filed a partial motion to dismiss count C of the complaint (ECF No. 8). The University argues that Haywood, who was an at-will employee, had no constitutionally protected interest in his employment and thus had no due process protections under the Fourteenth Amendment. In support of its position, the University relies on several decisions, including Linan-Faye Construction Co. v. Housing Authority of Camden, 49 F.3d 915

4

(3d Cir. 1995); Sanguigni v. Pittsburgh Board of Public Education, 968 F.2d 393 (3d Cir. 1992), and Unger v. National Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991).

In his response to the motion to dismiss (ECF No. 14), Haywood argues he was entitled to procedural due process under the Fourteenth Amendment to the United States Constitution. The count C claim is asserted under 42 U.S.C. § 1983. While plaintiff cites no authority for his argument, he does makes reference to section 20 of the employment contract (ECF No. 14-1), which provides for an internal dispute resolution mechanism "whereby any grievance *Mr. Haywood* had regarding the terms and conditions of his employment *could* be discussed with Defendant's Director of Athletics and then the Vice Chancellor." (ECF No. 14 at 5 (emphasis added).)

Section 20, however, is not applicable to the "Employer", *i.e.*, the University, but only to the "Employee", *i.e.*, Haywood. The text of section 20 is unambiguous: "In the event the *Employee* has a grievance concerning the terms and conditions of his employment, he will first discuss the matter with [….] This shall be the *exclusive* internal dispute mechanism by which the *Employee* may address any grievance internally." Section 20.1 of the Employment Contract (ECF No. 14-1 at 29) (emphasis added). There is no similar provision for the "Employer." As such, reliance on section 20 is misplaced.

Plaintiff argues that none of the decisions relied upon by defendant are relevant. To make this point, plaintiff engages in a lengthy exercise to distinguish this case from those relied upon by defendant. He, however, did not cite any authority in support of his position.[1] Plaintiff

---

[1] For plaintiff to prevail on this claim he needs to allege he has a property right, which is subject to the procedural due process protections set forth in the Fourteenth Amendment of the Constitution. It should be noted that property interests "are not generally created by the Constitution." Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an

does not understand the import of the rationale of the decisions cited by defendant. Those decisions provide guidance on the issue whether plaintiff is entitled to procedural due process rights under the Fourteenth Amendment.

The court of appeals in Hill v. Borough of Kutztown, 455 F3d 225 (3d Cir. 2006) recognized:

> To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

Id. at 233-34.

A review of the complaint and the brief in opposition to the motion to dismiss reveals that plaintiff is alleging a general violation of his procedural due process rights, but it is unclear what individual interest he is asserting. The only arguable interest would be a property interest. Usually, a plaintiff, in the context of an employment contract, asserts a property interest by pointing to the right to continued employment. Haywood, however, focuses not on a right to continued employment, but on liquidated damages. Had the defendant terminated plaintiff without cause, plaintiff would have been entitled to liquidated damages. Because the University fired him for cause, he did not receive liquidated damages under the contract. Plaintiff argues that defendant cannot have it both ways: once defendant opted for the "just cause" termination, he was entitled to procedural due process under the Constitution.

---

independent source such as state law …." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). As explained in Unger, even if state law may confer legal rights, that fact alone is not enough to bring a contract within federal due process protections. Unger, 928 F.2d at 1398 (quoting San Bernardino Physicians' Servs. Medical Group v. County of San Bernardino, 825 F.2d 1404, 1408 (9th Cir. 1987)). The relevant question is "where to draw the line." Id.

The question is whether his interest in the liquidated damages (or continued employment, to the extent plaintiff raised it) is an interest protected by the Fourteenth Amendment. In Unger, in determining whether the plaintiff had a "property interest" arising from a contract which was protected under the Fourteenth Amendment, the court of appeals noted:

> Today it is beyond dispute that a contract with a state entity can give rise to a property right protected under the Fourteenth Amendment. *See, e.g., Perry v. Sindermann*, 408 U.S. 593, 599–601, 92 S.Ct. 2694, 2698–2700, 33 L. Ed. 2d 570 (1972) (holding that contract of employment providing that professor could be terminated only for cause constituted property right protected by Fourteenth Amendment). Nevertheless, the Supreme Court has never held that every state contract gives rise to a property interest protected under the Fourteenth Amendment. *See id.* at 599, 92 S.Ct. at 2698–99 (noting that the non-tenured teacher's contract in Roth did not create a protectable property interest). Thus, the question becomes where to draw the line.

Unger, 928 F.2d at 1397.

The court of appeals, after reviewing decisions issued by other court of appeals, concluded:

> Relevant Supreme Court cases and the cases we have cited from the First, Second, Fifth, Seventh and Ninth Circuits disclose two general types of contract rights that have been found to be property protected under the Fourteenth Amendment. As the Second Circuit noted in *S & D Maintenance* [*Co., Inc. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988)], the first type arises where the contract confers a protected status, such as those "characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits." The second, albeit related type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause. *Id.* at 967; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985) (recognizing a property right created by a for-cause termination provision); *Arnett v. Kennedy*, 416 U.S. 134, 166–67, 94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15 (1974) (same).

Id. at 1399; see Linan-Faye Const. Co., 49 F.3d at 931-32 (same); Sanguigni, 968 F.2d at 401 (same); see also Pence v. Mayor and Twp. Comm. of Bernards Twp., No. 10-3496, 2011 WL 5190124, at *2 (3d Cir. Nov. 2, 2011) (same).

7

Applying these principles here, it is clear that plaintiff's interest in the liquidated damages or continued employment (to the extent plaintiff raised it) is not protected under the Constitution. Plaintiff does not allege that this matter involves "extreme dependence" such as welfare benefits or "permanence in the case of tenure" or that the contract could be terminated only for cause. Because the employment contract could be terminated without cause, plaintiff did not have a property interest arising from that contract and therefore he was not entitled to procedural due process under the Fourteenth Amendment. Plaintiff's harm as alleged arises from a breach of contract.

**Conclusion**

For the reasons set forth above, the claim in count C for a deprivation of procedural due process rights under the Fourteenth Amendment must be denied.

**ORDER**

**AND NOW,** this 22nd day of February, 2012, for the reasons set forth in the foregoing memorandum opinion, the partial motion to dismiss filed by defendant, the University of Pittsburgh, (ECF No. 8) is GRANTED and the claim asserted in count C under 42 U.S.C. § 1983 for a violation of the Fourteenth Amendment is dismissed.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
U.S. District Judge